# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| AMBER WILSON, et al., *individually and on behalf of all others similarly situated*,<br><br>                    Plaintiffs,<br><br>v.<br><br>FRONTIER COMMUNICATIONS PARENT, INC.,<br><br>                    Defendant. | Civil Action No. 3:24-CV-1418-L-BW<br><br>Consolidated with Civil Action Nos.<br>3:24-cv-01421; 3:24-cv-01423;<br>3:24-cv-01429; 3:24-cv-01435;<br>3:24-cv-01441; 3:24-cv-01444;<br>3:24-cv-01468; 3:24-cv-01492;<br>3:24-cv-01497; 3:24-cv-01501;<br>3:24-cv-01507; 3:24-cv-01516;<br>3:24-cv-01517; 3:24-cv-01589;<br>3:24-cv-01592; 3:24-cv-01671; and<br>3:24-cv-01788.<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND AND PROCEDURAL HISTORY ............................................1

III. SUMMARY OF SETTLEMENT ........................................................................3

    A. Settlement Class ...............................................................................................3

    B. Settlement Consideration .................................................................................3

        1. Cash Payments .........................................................................................4

           a. Cash Payment A – Documented Losses .............................................4

           b. Cash Payment B – Flat Cash Payment ..............................................4

        2. Credit Monitoring ....................................................................................4

        3. Pro Rata Adjustments on Cash Payments .................................................5

        4. Releases ....................................................................................................5

        5. The Notice Program, Claim Process, Opt-Outs, and Objections .............5

           a. Notice Program ..................................................................................5

           b. Claims Process ...................................................................................6

           c. Opt-Outs and Objections....................................................................6

        6. Service Awards, Attorneys' Fees, and Costs ...........................................6

           a. Service Awards ..................................................................................6

           b. Attorneys' Fees and Costs .................................................................7

        7. Funds Remaining After Distribution ........................................................7

IV.  LEGAL AUTHORITY .........................................................................................7

V.   LEGAL DISCUSSION..........................................................................................9

A.   The Court Should Certify the Proposed Class for Settlement Purposes .......................9

B.   The Settlement Terms are Fair, Adequate, and Reasonable ........................................12

    1.   Class Representatives and Counsel have Adequately Represented the Class.
    (Fed. R. Civ. P. 23(e)(2)(A)) ...................................................................................14

    2.   The Settlement is the product of good-faith arm's-length negotiations and is
    absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)) ...........................................14

    3.   The Settlement Agreement provides substantial relief to the Settlement Class,
    in light of the uncertainty of prevailing on the merits, the effectiveness of the
    proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P.
    23(e)(2)(C)) .............................................................................................................15

    4.   The proposed Settlement treats Settlement Class Members equitably.
    (Fed. R. Civ. P. 23(e)(2)(D)) ..................................................................................17

    5.   The remaining "Reed" Factors also weigh in favor of Preliminary Approval ......17

C.   The Proposed Settlement Administrator Will Provide Adequate Notice ...................18

VI.   PROPOSED SCHEDULE OF EVENTS ........................................................................19

VII.   CONCLUSION ..............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 9

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ......................................................................... 17

*Burnett v. CallCore Media, Inc.*,
    No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165 (S.D. Tex. June 25, 2024) ...................... 19

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................................. 8, 17

*Dehoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. Feb. 21, 2007) ........................................................ 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 02-CV-1152-M, 2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) .................. 8

*Feder v. Elec. Data. Sys. Corp*,
    429 F.3d 125 (5th Cir. 2005) ................................................................. 11, 14

*Hapka v. CareCentrix, Inc.*,
    No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) ................ 12

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ............................................................. 12

*In re Beef Indus. Antitrust Litig.*,
    607 F.2d 167 (5th Cir. 1979) .................................................................. 7

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
    No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) ................ 17

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................................. 10

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................ 8, 9, 10, 12

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) ........... 12

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ........................................................................ 7, 8

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015) ............................................................................ 9

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ................................................................................ 12

*Jones v. JGC Dall. LLC*, Civil Action,
   No. 3:11-CV-2743-O, 2014 U.S. Dist. LEXIS 177472 (N.D. Tex. Nov. 12, 2014) ................ 16

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) .................................................................................. 8

*Kostka v. Dickey's Barbecue Rests., Inc.*,
   No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022)
   *report and recommendation adopted*, 2022 U.S. Dist. LEXIS (N.D. Tex., Nov. 8, 2022) ........ 9

*Logan v. Marker Group, Inc.*,
   No. 4:22-CV-00174, 2024 U.S. Dist. LEXIS 126653 (S.D. Tex. July 18, 2024) ................... 17

*McCumber v. Invitation Homes, Inc.*,
   No. 3:21-cv-02194-B, 2024 U.S. Dist. LEXIS 166868 (N.D. Tex. July 30, 2024) ................ 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ............................................................................................ 18

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ................................................................................ 10

*O'Donnell v. Harris County*,
   No. H-16-1414, 2019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sep. 5, 2019) .................... 8, 13, 14

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ................................................................................ 8

*Plunkett v. Firstkey Homes LLC*,
   No. 3:23-cv-2684-L-BN, 2024 U.S. Dist. LEXIS 224946 (N.D. Tex. Nov. 21, 2024) ........... 16

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................................ 13

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ................................................................................ 11

*Vaughn v. Am., Honda Motor Co.*,

627 F. Supp. 2d 738 (E.D. Tex. 2007) ............................................................ 15

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 10

*Welsh v. Navy Federal Credit Union*,
   No. 5:16–CV–1062–DAE, 2018 U.S. Dist. LEXIS 227456 (S.D. Tex. 2018) ........................ 9

**Rules**

Fed. R. Civ. P. 5(b) ........................................................................................ 21

Fed. R. Civ. P. 23(a) ............................................................... 1, 9, 12, 14, 20

Fed. R. Civ. P. 23(a)(1) .................................................................................. 10

Fed. R. Civ. P. 23(a)(2) .................................................................................. 10

Fed. R. Civ. P. 23(a)(3) .............................................................................. 10, 11

Fed. R. Civ. P. 23(b)(3) .............................................................. 1, 9, 11, 12, 18, 20

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 18

Fed. R. Civ. P. 23(e) ................................................................................. 1, 13

Fed. R. Civ. P. 23(e)(1) ................................................................................ 18

Fed. R. Civ. P. 23(e)(2) ................................................................. 9, 12, 13, 14

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................... 2, 14

Fed. R. Civ. P. 23(e)(2)(B) ................................................................... 2, 14, 15

Fed. R. Civ. P. 23(e)(2)(C) .................................................................... 2, 15

Fed. R. Civ. P. 23(e)(2)(D) .................................................................... 2, 17

Fed. R. Civ. P. 23(e)(3) .......................................................................... 13, 20

**Statutes**

47 U.S.C. § 521 .............................................................................................. 2

815 Ill. Comp. Stat. § 505/1 ........................................................................... 2

Cal. Civ. Code § 1798.100 .............................................................................. 2

Conn. Gen. Stat. § 42-110b..................................................................................... 2

Fla. Stat. § 501.201 .................................................................................................. 2

N.Y. Gen. Bus. L. § 349 .......................................................................................... 2

**<u>Other Authorities</u>**

2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ........................................ 13, 15

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) .......................... 7

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.25 (3d ed. 1992) ..................................... 9

*Manual for Complex Litigation* § 30.44 (4th ed.)........................................................ 8

Plaintiffs[1], individually, and on behalf of others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class, preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims Process.

## I.    INTRODUCTION

On June 6, 2024, Defendant Frontier Communications Parent, Inc., announced a Data Incident that potentially affected the Private Information of 751,895 individuals. *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶ 3, attached as ***Exhibit B***. As a result of the Data Incident, this Action was initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id.* ¶ 5. Defendant denies all liability and wrongdoing. *Id.*

After extensive arm's-length negotiations, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id.* ¶¶ 13, 26-27. The Settlement's $5,640,000.00 all cash, non-reversionary common Settlement Fund will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. *Id.* ¶ 17. All Settlement Class Members may elect one of two types of Cash Payments and Credit Monitoring. *Id.* ¶ 18. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class. *Id.* ¶ 27.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On or about April 14, 2024, Defendant detected that an unauthorized party had gained access to parts of its internal computer systems and, after further analysis, determined that Private

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached here as ***Exhibit A***.

Information for consumers who applied to Frontier for residential services may have been affected. *Id.* ¶ 3. In or around June 2024, Defendant began sending notice letters to individuals advising that their Private Information had been potentially affected in the Data Incident. *Id*. ¶ 4.

Commencing in June 2024, Defendant was named in the 18 Related Actions seeking recompense for the Data Incident. *Id.* ¶ 5. Of those Related Actions, 15 were consolidated into this Action by order of the Court on July 25, 2024; two were consolidated into this Action by order of the Court on August 6, 2024; and the last was consolidated into this Action by order of the Court on September 6, 2024. In addition to consolidating the actions, the Court appointed Class Counsel as Interim Co-Lead Counsel. [ECF Nos. 8, 9]. On September 9, 2024, Plaintiffs filed their Consolidated Class Action Complaint alleging causes of action for: (1) negligence/negligence *per se*; (2) breach of express contract; (3) breach of implied contract; (4) invasion of privacy/intrusion upon seclusion; (5) violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*; (6) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b; (7) violation of the Florida Unfair And Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (8) violation of the Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*; (9) violation of the New York General Business Law, N.Y. Gen. Bus. L. § 349, *et seq.*; (10) violation of the United States Cable Act, 47 U.S.C. § 521, *et seq.*; (11) unjust enrichment; and (12) declaratory judgment. [ECF No. 32, ¶¶ 303-489].

The Parties began discussing settlement and scheduled mediation with Bennett G. Picker, Esq., an experienced data breach mediator, for February 18, 2025. Prior to the mediation, Plaintiffs requested, and Defendant propounded, informal discovery pertaining to the class size, types of Private Information impacted, and damages suffered by the Settlement Class. *Id.* ¶ 10. Plaintiffs also prepared and produced a mediation statement outlining their position. *Id*. At the request of the

mediator, the scheduled mediation was temporarily postponed, but in an effort to prepare judicial and financial resources, the Parties' counsel engaged in good-faith pre-mediation negotiations. *Id.* ¶ 11. These efforts were ultimately successful and resulted in an agreement in principle on February 12, 2025, at which time the Parties began drafting, negotiating and finalizing the Agreement, Notices, and Claim Form accompanying this Motion. *Id.* ¶¶ 11-12. The Agreement was signed on April 11, 2025. *Id.* ¶ 13.

## III.   SUMMARY OF SETTLEMENT

### A.   Settlement Class

The Settlement Class is defined as follows:

> All living individuals residing in the United States who received notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff.

Agreement ¶ 64. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id.*

### B.   Settlement Consideration

The Settlement's non-reversionary $5,640,000.00 Settlement Fund will be the total sum required to be paid by Defendant to settle this Action and will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any attorneys' fees and costs awarded by the Court to Class Counsel; and (4) any Service Awards to the Class Representatives approved by the Court. *Id.* ¶¶ 71-72. Settlement Class Members may elect one of two types of Cash Payments and Credit Monitoring. *Id.* ¶ 75.

3

1. **<u>Cash Payments</u>** - Settlement Class Members may elect either:

a. **Cash Payment A – Documented Losses.** A Claim for a Cash Payment for up to $5,000.00 (subject to *pro rata* adjustment based upon total value of Valid Claims) per Settlement Class Member upon presentment of reasonable documented Data Incident related losses. *Id*. To receive a payment, Settlement Class Members must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses and submitting reasonable supporting documents. *Id.* They shall not be reimbursed for expenses reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be rejected, and the Settlement Class Member's Claim will be as if he or she elected Cash Payment B. *Id.*

b. **Cash Payment B – Flat Cash Payment.** As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the estimated amount of $100.00 (subject to *pro rata* adjustment based upon total value of Valid Claims). *Id.*

2. **<u>Credit Monitoring</u>** - In addition to electing a Cash Payment, Settlement Class Members may elect up to two years of three-bureau Credit Monitoring that will provide the following benefits: (i) real time monitoring of the credit file at all three bureaus; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) comprehensive public record monitoring; (iv) identity theft insurance (no deductible); and (v) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 75(c).

**3.** ***Pro Rata* Adjustments on Cash Payments** - Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id.* If the amount of Valid Claims exhausts the Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. *Id.* To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Settlement Fund first for Credit Monitoring and then for Cash Payments. *Id.* Any *pro rata* adjustment will be on an equal percentage basis. *Id.* In the unexpected event the Credit Monitoring value on its own exhausts the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id.*

**4.** **Releases** – The Releasing Parties will release the Released Parties for claims relating to the Data Incident. *Id.* § XIII. Settlement Class Members who do not opt-out of the Settlement are bound by the Releases regardless of whether they submit a claim. *Id.*

**5.** **The Notice Program, Claim Process, Opt-Outs, and Objections –** The Parties have agreed to use Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶ 62.

    **a.** **Notice Program** - Defendants will deliver the Class List to the Settlement Administrator no later than 10 days after entry of the Preliminary Approval Order. *Id.* ¶ 81. Within 30 days following entry of the Preliminary Approval Order, Postcard Notice will be sent to Settlement Class members' last known postal addresses that Defendant has on record. *Id.* ¶ 82. The Settlement Administrator will perform reasonable address traces for undeliverable Postcard Notices. *Id.* ¶ 89. Postcard Notice shall include, *inter alia*: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of the Settlement Class; the last day of the

Objection Period for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Id.* ¶ 82. Those Notices will direct Settlement Class members to review the Long Form Notice's opt-out and objection instructions. *Id.* ¶ 85.

        **b.**     **Claims Process** - The Claims Process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms, compile documents supporting their Claim if Cash Payment A is elected, submit Claims, and decide whether to opt-out or object. Joint Decl. ¶ 35. Claim Forms (mail or online) are due to the Settlement Administrator by the Claims Deadline (15 days before the initial scheduled Final Approval Hearing). Agreement ¶¶ 25, 70. The Claim Form is in plain language for easy completion. Joint Decl. ¶ 36. The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement ¶ 93.

        **c.**     **Opt-outs and Objections** – The opt out and objection periods begin the day after the earliest day on which the Notice is first distributed and ends 30 days before the initial scheduled Final Approval Hearing. *Id.* ¶¶ 48-49. These dates are specifically calculated to provide sufficient time to access and review the Settlement documents, including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original date set for the Final Approval Hearing and posted on the Settlement Website. *Id.* ¶ 10. Settlemetn Class members who opt-out may not object.

      **6.**     <u>**Service Awards, Attorneys' Fees and Costs**</u>

        **a.**     **Service Awards** - The Settlement Agreement calls for reasonable Service Awards for the Class Representatives of up to $2,500.00 each. I*d*. ¶ 107. The Service Awards are

meant to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions. Joint Decl. ¶ 37.

        **b.**     **Attorneys' Fees and Costs** - After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Class Counsel intend to seek an attorneys' fees award not to exceed one-third of the Settlement Fund and reimbursement of litigation costs. Agreement ¶ 108. The Notices advise the Settlement Class of these intended requests and further information on how to object. Joint Decl. ¶ 38. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Awards prior to the deadlines to opt-out of or object. Agreement ¶ 107.

        **7.**     **<u>Funds Remaining After Distribution</u>**

    The Settlement will exhaust the Settlement Fund. *Id.* ¶ 110. If funds remain from uncashed checks 240 days following the date Settlement Class Members are sent an email to select their form of payment, any residual shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. *Id.*

## IV.   LEGAL AUTHORITY

    Rule 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *In re Pool*

*Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015)*.* "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314–15.

Plaintiffs here seek preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). Judicial and public policy favors the resolution of disputes through settlement. *O'Donnell v. Harris County*, No. H-16-1414, 2019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sep. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977))). There is a strong presumption in favor of finding settlement agreements fair—particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *O'Donnell*, 2019 U.S. Dist. LEXIS 151159, at *25 (citing *Erica P. John Fund, Inc. v. Halliburton Co*., No. 02-CV-1152-M, 2018 U.S. Dist. LEXIS 69143, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012))). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007). In granting preliminary approval, the Court determines

it will "likely" be able to grant final approval under Fed. R. Civ. P. 23(e)(2) and certify the Settlement Class.

Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and allow Notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Under Fed. R. Civ. P. 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Fed. R. Civ. P. 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *23 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, 2 2022 U.S. Dist. LEXIS 203081 (N.D. Tex., Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16–CV–1062–DAE, 2018 U.S. Dist. LEXIS 227456 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland*, 851 F. Supp. 2d 1040. This case is no different.

***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A class of 100 to 150 members "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class clearly surpasses that threshold because it includes 751,898 individuals who had their Private Information potentially compromised. Judicial economy would be well-served by certification.

***Commonality.*** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common, rather the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation." *In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)). "[C]ourts have routinely found commonality in similar data breach cases." *Kostka*, 2022 U.S. Dist. LEXIS 188186, at *23. Here, the commonality requirement is met because numerous common issues exist, including: whether Defendant failed to adequately safeguard the Settlement Class' Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and whether Defendant's conduct was negligent. These common questions, and others alleged in the Complaint, are central to the causes of action, will generate common answers, and can be addressed classwide.

*Typicality.* Rule 23(a)(3) typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Plaintiffs' and Settlement Class members' claims all stem from the Data Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information. All have Article III standing. *Kostka*, 2022 U.S. Dist. LEXIS 188186, at *4 (when class action settles at pleading stage, court only considers whether named plaintiffs plausibly alleged minimum Article III standing requirements, as Plaintiffs did in their Complaint). Thus, typicality is satisfied.

*Adequacy of Representation.* Plaintiffs must be able to provide fair and adequate representation. Plaintiffs must establish: (1) there is no antagonism or conflict of interest between the Class Representatives and other Settlement Class members; and (2) counsel and the Class Representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Data Incident to their Private Information. The Settlement will make all of them eligible for the same Settlement Class Member Benefits. Further, proposed Class Counsel have decades of combined experience as class action litigators, including data breach litigation, and are well suited to advocate for the Settlement Class. *See* Joint Decl., ¶¶ 40-43, Exs. 1-4. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate relief.

*Predominance and Superiority.* Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc*., 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendant breached that duty. The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *2 (N.D. Ga. Aug. 23, 2016) (same). Second, the resolution of approximately 751,895 claims in one class action is far superior to litigating individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating so many individual cases arising out of the Data Incident.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

### B.    The Settlement Terms are Fair, Adequate, and Reasonable.

At Preliminary Approval, and before Notice is sent, the Court must determine it will "likely" be able to grant Final Approval under the Rule 23(e)(2) factors, deciding whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) revisions, the Fifth Circuit developed its own factors (known colloquially as the "*Reed*" factors) for whether a settlement is fair, adequate, and reasonable: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *McCumber v. Invitation Homes, Inc.*, No. 3:21-cv-02194-B, 2024 U.S. Dist. LEXIS 166868, at *4 (N.D. Tex. July 30, 2024) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them. *Kostka*, 2022 U.S. Dist. LEXIS 188186, at *30; see *also* Fed. R. Civ. P. 23(e)(2), *Committee Notes to 2018 Amendments* ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding that a settlement is fair, reasonable, and adequate. *O'Donnell*, 2019 U.S. Dist. LEXIS 151159, at *9. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Court should

13

find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Reed* factors and grant Preliminary Approval to allow the Notice Program to begin.

### 1. *Class Representatives and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).*

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder*, 429 F.3d at 130. Here, the Settlement Class members are all potentially affected by the same Data Incident as the Class Representatives, and thus the Class Representatives have common interests with the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Joint Decl. ¶ 44.

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. *Id*. ¶ 42. As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

### 2. *The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).*

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Kostka*, 2022 U.S. Dist. LEXIS 188186, at *31 (quoting *ODonnell v. Harris County*, 2019 U.S. Dist. LEXIS 151159, at *9 (S.D. Tex. Sept. 5,

2019)). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). Here, there was no fraud or collusion. After a full exchange of information related to liability and damages, the Parties engaged in good-faith negotiations, resulting in a settlement in-principle. Joint Decl. ¶ 11. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement. *Id.* ¶ 12. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am., Honda Motor Co*., 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

> **3.    *The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).***

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Incident. First, all Settlement Class Members may select two years of Credit Monitoring valued at $90.00 per person, per year to protect financial assets and providing identity protection. Agreement § V; Joint Decl. ¶ 19. Second, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B (estimated $100.00 cash payment, subject to *pro rata*

adjustment). Agreement ¶ V(a)(b). These benefits are consistent with, and in fact exceed, other approved data breach settlements.[2] Joint Decl. ¶ 20.

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp.*, 2015 U.S. Dist. LEXIS 155137, at *2.

Moreover, as the Motion for Final Approval will detail, the one-third of the common Settlement Fund for attorneys' fees is regularly granted in the Fifth Circuit. *See, e.g., Jones v. JGC Dall. LLC*, Civil Action No. 3:11-CV-2743-O, 2014 U.S. Dist. LEXIS 177472, at *19 (N.D. Tex. Nov. 12, 2014) (finding one-third fee not unusual in Fifth Circuit); *Plunkett v. Firstkey Homes LLC*, No. 3:23-cv-2684-L-BN, 2024 U.S. Dist. LEXIS 224946, at *18 (N.D. Tex. Nov. 21, 2024) (same). The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiffs strongly believe in the merits, they also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs would likely have to immediately survive a motion to dismiss and/or motion to compel arbitration. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally

---

[2] *See, e.g.*, *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.); *In re: Planet Home Lending, LLC Data Breach*, Case No. 3:24-cv-127 (D. Conn.); and *In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.).

face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 U.S. Dist. LEXIS 126653 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute the Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and the Settlement Class gain significant benefits without risking not receiving any relief at all if the case continues.

### 4. *The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).*

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment and Credit Monitoring, subject to proper claim completion and validation by the Settlement Administrator. Accordingly, this factor also weighs in favor of Preliminary Approval.

### 5. *The remaining "Reed" Factors also weigh in favor of Preliminary Approval.*

The remaining *Reed* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

As to the sixth factor (opinions of class counsel, class representatives, and absent class members), it is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class members have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiffs approve of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members, makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Joint Decl. ¶¶ 27-28.

Thus, the *Reed* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

## C.    The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation. See* Agreement, Exs. 1–3. Every Settlement Class member will receive direct and individual notice via first-class mail. Joint Decl. ¶ 29. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 30. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶ 31. The Settlement Administrator will maintain a toll-free telephone

18

number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id*. ¶ 32. A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id*. ¶ 33.

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. 1–3.

The proposed direct Postcard Notice is the gold standard and is consistent with notice programs approved in this Circuit. *See*, *e.g.*, *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard notice). Accordingly, the Notice Program should be approved. Joint Decl. ¶ 34.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| | |
|---|---|
| **Notice Program Begins (Postcard Notice Sent)** | 30 days after Preliminary Approval Order |
| **Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 45 days before original Final Approval Hearing date |
| **Opt-Out Period** | 30 days before original Final Approval Hearing date |

| Objection Deadline | 30 days before original Final Approval Hearing date |
|---|---|
| **Deadline to Respond to Objections** | 15 days before original Final Approval Hearing date |
| **Deadline to Submit Claim Forms** | 15 days before original Final Approval Hearing date |
| **Final Approval Hearing** | **_____, 2025, at _____am/pm**.<br>(Preferably the week of **September 22, 2025**, or soon thereafter) |

## VII.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives; (7) appoint Jeff Ostrow, Gary M. Klinger, Tyler J. Bean, and Joe Kendall as Class Counsel; (8) appoint Epiq as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

A proposed Preliminary Approval Order is attached as ***Exhibit C***.


Dated: April 11, 2025.                                     Respectfully submitted,


/s/ *Jeff Ostrow*
Jeff Ostrow (admitted *pro hac vice*)              Joe Kendall
**KOPELOWITZ OSTROW P.A.**                    Texas Bar No. 11260700
One West Las Olas Blvd, Suite 500              **KENDALL LAW GROUP, PLLC**
Fort Lauderdale, FL 33301                           3811 Turtle Creek Blvd., Suite 825
Tel: 954-332-4200                                        Dallas, Texas 75219
ostrow@kolawyers.com                              Tel: 214-744-3000
                                                                jkendall@kendalllawgroup.com

Gary Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
gklinger@milberg.com

Tyler Bean (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
Tel: 212-532-1091
tbean@sirillp.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF CONFERRAL

I hereby certify Plaintiffs and Defendant conferred regarding the relief requested, and this

motion is unopposed.

/s/ *Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record

on April 11, 2025, via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

/s/ *Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**