IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMBER WILSON, et al, | § | |
| individually and on behalf of | § | |
| all others similarly situated, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:24-CV-1418-L-BW |
| | § | |
| FRONTIER COMMUNICATIONS | § | |
| PARENT, INC., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of

Class Action Settlement, (Dkt. No. 60 ("Mot.")).[1]  United States District Judge Sam

A. Lindsay referred the case to a magistrate judge for pretrial management pursuant.

(Dkt. No. 14.)  On August 23, 2024, the referral was transferred and reassigned to the

undersigned pursuant to Special Order 3-354.  (Dkt. No. 27.)

For the reasons explained in these Findings, Conclusions, and

Recommendation, the District Court should **GRANT** Plaintiffs' motion.

## I.  BACKGROUND

This case arises out of a detected unauthorized access of Defendant Frontier

Communications Parent, Inc.'s ("Frontier") computer system on or about April 14,

---

[1] In accordance with the settlement agreement, "Plaintiffs" refers to Brian Carolus, Adrian Graham, Christopher Miller, Lauren Morgan, Marcelo Muto, Ian Terrell, Richard Retter, Joselyn Chiong, Timothy Morgan, James Pratt II, Seth Burton, Lori Rusk, and Gerarld Wilson.  (Settlement Agreement at 9.)

2024 ("Data Incident").  (*See* Mot. at 1; *see also* Dkt. No. 60-2 at ECF pp. 1-2.)

Plaintiffs allege that, after investigating the data breach, Frontier determined that

"Private Information for consumers who applied to Frontier for residential services

may have been affected."[2]  (*Id.*)  Plaintiffs allege that this data incident places them at

"significant risk of identity theft and various other forms of personal, social, and

financial harm[,]" (*See* Dkt. No. 1 ("Compl.") ¶ 6), and that "[t]he risk will remain

for their respective lifetimes[,]" (*id.*).

     Plaintiffs initiated this action on June 10, 2024, to "address Frontier's

inadequate safeguarding of Class Members' Private Information that it collected and

maintained."  (Compl. ¶ 11.)  This consolidated case was originally 18 separate,

related actions seeking recovery over the Data Incident.  (Mot. at 2.)  On September

9, 2024, once the 18 cases had been consolidated, Plaintiffs filed their Consolidated

Class Action Complaint alleging causes of action for: (1) negligence/negligence per

se; (2) breach of express contract; (3) breach of implied contract; (4) invasion of

privacy/intrusion upon seclusion; (5) violation of the California Consumer Privacy

Act, Cal. Civ. Code § 1798.100; (6) violation of the Connecticut Unfair Trade

Practices Act, Conn. Gen. Stat. § 42-110b; (7) violation of the Florida Unfair And

Deceptive Trade Practices Act, Fla. Stat. § 501.201, et seq.; (8) violation of the

Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat.

---

[2] The Settlement Agreement defines "Private Information" as "some combination of Settlement Class members' names, dates of birth, Social Security numbers, or other personally identifiable information stored within Defendant's information technology systems at the time of the Data Incident."  (*See* Settlement Agreement at 9.)

§ 505/1, et seq.; (9) violation of the New York General Business Law, N.Y. Gen. Bus. L. § 349, et seq.; (10) violation of the United States Cable Act, 47 U.S.C. § 521, et seq.; (11) unjust enrichment; and (12) declaratory judgment. (*See generally* Dkt. No. 32.)

Prior to class certification, Plaintiffs and Frontier negotiated a settlement agreement and signed it on April 11, 2025. (Mot. at 2-3; *see also* Dkt. No. 60-1 at ECF pp. 2-44 ("Settlement Agreement").) The terms of the proposed settlement include establishment of a "non-reversionary $5,640,0000.00 Settlement Fund" funded by Defendant to pay: "(1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any attorneys' fees and costs awarded by the Court to Class Counsel; and (4) any Service Awards to the Class Representatives approved by the Court." (Mot. at 3 (citing Settlement Agreement ¶¶ 59-60).)

Under terms of the proposed settlement, class members who submit a valid claim may elect one of two types of cash payment and credit monitoring.[3] (Settlement Agreement at 14-16.) Settlement class members may elect "Cash Payment A" and receive "a maximum of $5,000.00 . . . upon presentment of reasonable documented losses related to the Data Incident." (*Id.* ¶ 63.) Alternatively, they "may elect to receive Cash Payment B – Flat Cash, which is a flat-cash payment in the estimated amount of $100.00." (*Id.*) Additionally,

---

[3] The settlement agreement points out that cash payments are subject to pro rata increases or reductions depending on the number of valid claims received. (Settlement Agreement ¶ 63.)

"Settlement Class Members may also make a Claim for 2 years of Credit Monitoring[,]"an additional value of approximately $90.00 per year.  (*Id.*)

After the parties agreed to the terms of the proposed settlement, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement.  The Motion asks the Court to (1) grant preliminary approval; (2) certify for settlement purposes the settlement class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (e); (3) approve the notice program and the form of the notices; (4) approve the claim form and claim process; (5) approve the notice program's opt-out and objection procedures; (6) appoint Plaintiffs as class representatives; (7) appoint Jeff Ostrow, Gary M. Klinger, Tyler J. Bean, and Joe Kendall as class counsel; (8) appoint Epiq as the settlement administrator; (9) continue to stay the action pending final approval; (10) enjoin and bar all members of the settlement class from continuing in any litigation or asserting any claims against Defendants and the other released parties arising out of, relating to, or in connection with the released claims prior to the Court's decision to grant final approval of the settlement; and (11) schedule a final approval hearing.

## II.  LEGAL STANDARDS

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  To approve the settlement, a court must first determine whether the class should be preliminarily certified for settlement purposes.  *Bridges v. Ridge Nat. Res., LLC*, No. 18-CV-00134-DC, 2020 WL 7495252, at \*2 (W.D. Tex. Jan. 3, 2020) (citing *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D.

4

424, 426-27 (E.D. Tex. 2002)). A court should only preliminarily certify the class if it finds that it is likely to certify the class at the final approval stage. *See* Fed. R. Civ. P. 23(e)(1)(B). In making this finding, a court must determine if the proposed class meets the four prerequisites of Rule 23(a) and one of three additional requirements in Rule 23(b). *See* Fed. R. Civ. P. 23; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (noting that class certification under 23(b)(3) requires two additional requirements). The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *In re Heartland Payment Sys. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1051 (S.D. Tex. 2012).

If a court preliminarily certifies the class, it then moves to the preliminary fairness evaluation. "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. To secure preliminary approval, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## III. ANALYSIS

**A.    The District Court should preliminarily certify the settlement class.**

For the purposes of settlement, the parties propose a settlement class

consisting of:

> all living individuals residing in the United States who received notice
> of the Data Incident indicating their Private Information may have been
> impacted in the Data Incident.  Excluded from the Settlement Class are
> (a) all persons who are directors and officers of Defendant, or its
> respective subsidiaries and affiliated companies; (b) governmental
> entities; and (c) the Judge(s) assigned to the Action, the Judge's
> immediate family, and Court staff.

(Settlement Agreement ¶ 52.)  "When the parties to a putative class action

reach a settlement agreement prior to class certification, 'courts must peruse

the proposed compromise to ratify both the propriety of the certification and

the fairness of the settlement.'"  *Jones v. Singing River Health Sys.*, 1:14CV447-

LG-RHW, 2016 WL 6106518, at *2 (S.D. Miss. Jan. 20, 2016) (quoting *Staton

v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

### 1.    Rule 23(a) Factors

"Rule 23(a) states four threshold requirements applicable to all class actions:

(1) numerosity (a 'class [so large] that joinder of all members is impracticable');

(2) commonality ('questions of law or fact common to the class'); (3) typicality

(named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of

representation (representatives 'will fairly and adequately protect the interests of the

class')."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

6

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement." *Mullen*, 186 F.3d at 624. Here, the settlement class consists of the "751,895 consumers that had applied to Defendant for residential services[.]" (*See* Dkt. No. 60-2 at ECF p. 2.) Therefore, the proposed Settlement Class contains too many members to be practicably joined, and the undersigned finds that the numerosity requirement is met. *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *6 (N.D. Tex. Oct. 14, 2022), *adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022).

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Almon v. Conduent Bus. Servs., LLC*, 2022 WL 902992, at *25 (W.D. Tex. Mar. 25, 2022) ("The threshold of commonality is not high."). "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020)

(quoting *Wal-Mart*, 564 U.S. at 350). In this case, there is sufficient commonality because there are multiple common issues, including: whether Frontier failed to properly safeguard Private Information, whether Frontier failed to implement and main reasonable security procedures and practices appropriate to the nature and scope of the information, and whether Frontier's conduct was negligent. (*See* Mot. at 10.) Additionally, "other courts have routinely found commonality in similar data breach cases." *Kostka*, 2022 WL 16821685, at *7. Therefore, the Court should find there are common questions of fact or law among the proposed settlement class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements . . . serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5. Plaintiffs' claims arise out of the same Data Incident and Frontier's data cybersecurity protocols to protect Private Information, (Mot. at 11), therefore the undersigned finds that Plaintiffs' claims and the proposed settlement class members' claims are so interrelated to meet the typicality requirement.

Rule 23(a)(4) requires the "representative parties" to "fairly and adequately" protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This adequacy requirement is satisfied where counsel for the class is qualified and competent to

8

prosecute the action and the interests of the proposed class representatives do not conflict with the interests of the class. *See Morrow v. Washington*, 277 F.R.D. 172, 195 (E.D. Tex. 2011). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). Plaintiffs have demonstrated to be well-suited to represent the proposed settlement class and no party proffers any evidence to the contrary. The proposed class representatives'—Plaintiffs'—interests are aligned with the proposed settlement class; they both seek relief for injuries arising out of the same Data Incident jeopardizing their Private Information. (*See* Mot. at 11.) Further, Plaintiffs' counsel has provided evidence demonstrating that they are adequately suited to serve as class counsel in a data breach case such as this one. (*See* Dkt. No. 60-2 at ECF pp. 7-8*; see also* Dkt. No. 60-2 at ECF pp. 11-81.) Accordingly, the Court should find that Plaintiffs and their counsel can adequately represent the proposed settlement class's interests.

The Fifth Circuit has indicated that there is also an implied requirement under Rule 23 that the "class of persons to be represented by the proposed class representative[s]" is "ascertainable." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Generally speaking, this requirement mandates that the putative class be "adequately defined." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). Ultimately, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine

whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation omitted).  The undersigned finds that the parties' proposed Class is ascertainable and readily identifiable.

### 2.    Rule 23(b) Factors

The parties seek certification under Rule 23(b)(3).  (*See* Mot. at 11-12.)  Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The predominance requirement "examines whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 745-46 (E.D. Tex. 2007) (quoting *Amchem*, 521 U.S. at 623), *stay granted, order amended sub nom. Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007).  "Where defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will ensure that funds are available to compensate plaintiffs, predominance is satisfied."  *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012) (internal quotation marks omitted), *aff'd sub nom.*, *In re Deepwater Horizon*, 739 F.3d 790.

The superiority requirement is met "when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy."  *Vaughn*, 627 F. Supp. 2d at 746 (citing *Mullen*, 186 F.3d at 627).  Because

this is a proposed settlement class, issues relating to the manageability of a class trial are irrelevant. *Id.* (citing *Amchem*, 521 U.S. at 620).

This case meets both the predominance and superiority requirements. The Plaintiffs identify common key issues such as whether Frontier had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether that duty was breached. (Mot. at 12.) Similarly, a class action is the superior way to litigate the proposed settlement class's claims. The undersigned finds that concentrating the settlement claims, as opposed to having 751,895 individual lawsuits, would serve the primary goals of Rule 23, namely economies of time, effort, and expense without sacrificing fairness to the proposed settlement class's members. *Bridges*, 2020 WL 7495252, at *4.

In conclusion, the undersigned finds that the proposed class sufficiently satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3) to warrant preliminary certification of the proposed class.[4]

## B.  The District Judge should preliminarily approve the proposed settlement because it meets the Rule 23(e) and precedential requirements and will likely be found fair at the final approval stage.

A class action lawsuit can only be settled if the court approves the terms of the settlement. Fed. R. Civ. P. 23(e). Trial court review of a class action settlement

---

[4] Plaintiffs allege that because all Settlement Class members' claims stem from the Data Incident and Frontier's cybersecurity protocols they all have Article III standing. The undersigned does not see any apparent issue with standing, nor has any party suggested it, accordingly the undersigned finds that an in-depth Article III standing analysis is not necessary here.

proposal is a two-step process: preliminary approval and a subsequent final approval after a fairness hearing. *Jones*, 2016 WL 6106518, at *5 (internal citations omitted). At the preliminary approval stage, the Court must ascertain whether the proposed settlement is likely to be approved as fair, reasonable, and adequate, and whether the settlement class is likely to be certified for settlement purposes at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B).

"If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314–15 (E.D. La. 2015) (citing *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962(RCC), MDL No. 1283, 2005 WL 1635158, at *5 (S.D.N.Y. 2005)); *see also McNamara*, 214 F.R.D. at 430.

Traditionally, courts in the Fifth Circuit have considered the following six factors, from *Reed v. General Motors Corp.*, in making this determination: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. 703 F.2d 170, 172 (5th Cir. 1983).

In addition, Rule 23(e)(2), as amended in 2018, provides that, in determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a Court must consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  These Rule 23(e)(2) requirements do not "displace any factor" sanctioned by the Fifth Circuit.  *Id.* advisory committee's note to 2018 amendments.  Indeed, the Rule 23(e)(2) requirements overlap significantly with the *Reed* factors.  Accordingly, the Court will consider the Rule 23 requirements as informed by the *Reed* factors.

### 1.    Plaintiffs and their counsel have adequately represented the class

As detailed above in the Rule 23(a) analysis, Plaintiffs and their counsel have adequately represented the class.  Plaintiffs' interests are aligned with the proposed class's interests as all class members are potentially affected by the same Data

Incident.  In addition, counsel has provided evidence to show the attorneys' extensive class action experience.  (*See* Dkt. No. 60-2 at ECF p 7-8*; see also* Dkt. No. 60-2 at ECF p. 11-81.)  Class counsel affirms they have used this experience to "vigorously pursue[] the Settlement Class'[s] interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation."  (Dkt. No. 60-2 at ECF p. 6-7.)

> ### 2.    The proposed settlement was negotiated at arm's length.

Rule 23(e)(2)(B) asks whether the proposed settlement was negotiated at arm's length, thereby implicating the first *Reed* factor—the existence of fraud or collusion in the negotiation.  "The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *ODonnell v. Harris County*, No. H-16-1414, 2019 WL 4224040, at *9 (S.D. Tex. Sept. 5, 2019) (citation omitted); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010).  "The involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) (citation omitted); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No 3:02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (holding that the presence of a neutral mediator "strongly suggests that the settlement was not the result of improper dealings").

In this case, there is no evidence of fraud or collusion.  Class counsel avers that "in an effort to prepare judicial and financial resources, the Parties' counsel engaged in good-faith pre-mediation negotiations."  (Dkt. No. 60-2 at ECF p. 4.)

"[T]he Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator." (*Id.*) Additionally, there has not been any suggestion of fraud or collusion in this case.

### 3.    The relief offered by the proposed settlement is adequate.

Rule 23(e)(2)(C) requires the relief granted by the settlement to be adequate, taking into account four considerations: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief . . . , including the method of processing . . . claims; (iii) the terms of any . . . award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). "The first consideration—the costs risks, and delay of trial and appeal—also implicates four of the *Reed* factors: '(2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery.'" *Kostka*, 2022 WL 16821685, at *11 (quoting *Reed*, 703 F.2d at 172).

"[T]he risks inherent to this litigation are readily apparent." *Id.* "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Additionally, "in the Fifth Circuit, there is little case law on the subject of data breaches." *Kostka*, 2022 WL 16821685, at *11. Even though Plaintiffs contend they are confident in the merits of the claims, they still acknowledge "the potential that either side will lose at trial," (Mot. at 16),

15

and the "substantial additional costs if litigation continues, including experts[,]" (*id.*). Further, "[t]he fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to say nothing of potential appeals." *Kostka*, 2022 WL 16821685, at *11.

The proposed settlement benefits are in line with, if not better, than other settlements in similar data breach cases. *See, e.g.*, *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.) (approving a settlement which included a $3,534,128.50 non-reversionary settlement fund); *In re: Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (D. Conn.) (approving a settlement which included a $2,425,000.00 non-reversionary settlement fund); *and In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.) (approving a settlement including a $3,250,000.00 non-reversionary settlement fund). Given the risk inherent at this stage of the litigation, and the potential complexity and additional costs, the first consideration—the costs, risks, and delay of trial and appeal—favor approval. *See Heartland*, 851 F. Supp. 2d at 1064 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.").

The second consideration is the proposed method of distributing relief. This consideration requires the Court to consider whether the claims process is "unduly demanding" on potential class members. Fed. R. Civ. P. 23. In order to be considered for relief, a settlement class member must simply submit a claim—which

16

may be done online—and the settlement administrator will then review it.  (*See* Dkt. No. 60-1 at ECF p. 24-25.)  The second consideration also favors approval.

The third consideration looks at the proposed award of attorneys' fees.  Courts in the Fifth Circuit have routinely awarded attorneys' fees as a portion of the total settlement fund.  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 645 (5th Cir. 2012) (upholding the award of attorneys' fees through a common fund in a class action); *Klein*, 705 F. Supp. 2d at 673 (stating that "[t]he use of a common fund to pay attorney's fees in class action settlements is well established" and awarding fees as a percentage of the common fund); *In re Heartland*, 851 F. Supp. 2d at 1071 (awarding attorneys' fees as a percentage of the common fund in a data breach case).  Here, class counsel "intend so seek an attorneys' fees award not to exceed one-third of the Settlement Fund and reimbursement of litigation costs."  (Mot. at 7.) The undersigned finds that the award requested is fair and reasonable.  *See e.g.*, *In re: Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (D. Conn.) (approving an attorneys' fee award of 33.33% of the settlement fund); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100, Dkt. No. 46 at 6 (D. Mass.) (approving Plaintiffs' request for "an attorneys' fee award of $1,177,925.02, which represents 33.33% of the total Settlement Fund[]"), *see also Kostka*, 2022 WL 16821685, at *12.

The fourth consideration, any agreement required to be disclosed by Rule 23(e)(3), is not applicable here as no party has identified any such agreement.

Accordingly, each of the considerations in Rule 23(e)(2)(C) favors the proposed settlement be approved.

### 4.    The proposed settlement treats class members equitably.

Rule 23(e)(2)(D) requires that the proposed settlement treat class members equitably.  Fed. R. Civ. P. 23(e)(2)(D).  But equitable treatment is not synonymous with equal treatment.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855-56 (1999) ("[A] settlement must seek equity by providing for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves."). "It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class members' claims."  *In re Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 948 (internal citations omitted).

Here, "the Settlement does not improperly discriminate between any segments of the Settlement Class."  (Mot. at 17.)  Instead, all settlement class members may "make a Claim for a Cash Payment and Credit Monitoring, subject to proper claim completion and validation by the Settlement Administrator."  (*Id.*)  Accordingly, this factor also weighs in favor of approval.

### 5.    The opinions of the Plaintiffs and their counsel indicate that the proposed settlement should be approved.

Lastly, the Court considers the final factor mentioned in *Reed*: the opinions of the settling plaintiffs, their attorneys, and absent class members.  Critically, in evaluating a proposed settlement, courts should give significant weight to the negotiated resolution of the parties.  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  Absent fraud or collusion, the court "should be hesitant to substitute its own judgment for that of counsel."  *Id.*

18

Here, the Plaintiffs and the proposed class counsel support the settlement and request that the Court approve it. (*See generally* Mot.) This is especially relevant given the extensive experience that proposed class counsel has in class actions, including other data breach actions. (*Id.* at 18.) Proposed class counsel states that the proposed settlement is "fair, reasonably, adequate, and worthy of Preliminary Approval." (*Id.*) This factor thus also weighs in favor of approval.

Accordingly, the undersigned recommends that the District Judge preliminarily approve the proposed settlement.

## C.    The Court should approve the notice program.

"If the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which argument and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. Federal Rule of Civil Procedure 23(e) requires the Court to direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.

Under the proposed Notice Program "[e]very Settlement Class member will receive direct and individual notice via first-class mail." (Mot. at 18.) If such notice is undeliverable, then "the Settlement Administrator will research a better address and re-send Notice." (*Id.*) Additionally, "[t]he Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant findings." (*Id.*) "The Settlement Administrator will maintain a toll-free telephone" to answer questions from the settlement class members, (*id.* at 18-19), and

19

"[a] post office box will be maintained to receive Claim Forms, opt-out requests, and objections[,]" (*id.* at 19).

Plaintiffs further assert that the information in the notice is "clear and straightforward[.]" (Mot. at 19.) The notices define the settlement class, and the settlement's essential terms, including the recovery options and relevant deadlines. (*Id.*) The notices will also include explanations for opting out and objecting, (*id.*), procedural deadlines including the final approval hearing date, time, and location, (*id.*), and display class counsel's contact information, (*id.*).

The undersigned finds that the proposed notice plan presents a fair opportunity for notice and should be approved. *See Burnett v. CallCore Media, Inc.*, No. 4:21-CV-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) ("The class notice, coupled with the settlement website, properly advised the class members of their rights, and provided ample due process.").

## D.    The Court should grant Plaintiff's remaining requests.

Plaintiffs request that the Court appoint them as class representatives. (Mot. at 20.) As noted above, Plaintiffs' interests are aligned with the interests of the proposed class, and they have demonstrated commitment to adequately representing the proposed class. (*See* Mot. at 11 ("[T]he Class Representatives are competent, willing, and able to protect the interests of absent class members."); *see also* Dkt. No. 60-2 at ECF p. 7 (stating that Plaintiffs' efforts to represent the Class include "assisting in the Action's investigation, maintaining contact with Class Counsel,

reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions.").)

Plaintiffs also ask the Court to appoint Jeff Ostrow, Gary M. Klinger, Tyler J. Bean, and Joe Kendall as Class Counsel. As discussed above, the proposed class counsel together have extensive experience in class actions, including data breach litigation, and would adequately represent the class. The Court should appoint them as class counsel.

Plaintiffs next ask the Court to appoint Epiq Class Action & Claims Solutions, Inc., as the settlement administrator. "[M]any courts throughout the country have appointed Epiq to be settlement administrator in large, complex, class action cases." *Kostka*, 2022 WL 16821685, at *14. The District Court should appoint Epiq as settlement administrator.

Plaintiffs request that the Court set a final fairness hearing for final approval of the proposed settlement. As mentioned above, "if the Court determines that the settlement is fair, the Court [then] directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. Accordingly, the District Judge should set a final fairness hearing. The hearing should only be set after a sufficient notice period. At the final hearing, any concerned class members, may raise concerns regarding the fairness of the settlement or certification of the class.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  Specifically, the Court should (1) grant preliminary approval; (2) certify for settlement purposes the settlement class, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (e); (3) approve the notice program and the form of the notices; (4) approve the claim form and claim process; (5) approve the notice program's opt-out and objection procedures; (6) appoint Plaintiffs as class representatives; (7) appoint Jeff Ostrow, Gary M. Klinger, Tyler J. Bean, and Joe Kendall as class counsel; (8) appoint Epiq as the settlement administrator; (9) continue to stay the action pending final approval; (10) enjoin and bar all members of the settlement class from continuing in any litigation or asserting any claims against Defendants and the other released parties arising out of, relating to, or in connection with the released claims prior to the Court's decision whether to grant final approval of the settlement; and (11) schedule a final approval hearing.

**SO RECOMMENDED** on June 20, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).