**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| AMBER WILSON, et al., individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>FRONTIER   COMMUNICATIONS PARENT, INC.,<br><br>              Defendant. | Civil Action No. 3:24-CV-1418-L<br><br>Consolidated with Civil Action Nos. 3:24-cv-01421; 3:24-cv-01423; 3:24-cv-01429; 3:24-cv-01435; 3:24-cv-01441; 3:24-cv-01444; 3:24-cv-01468; 3:24-cv-01492; 3:24-cv-01497; 3:24-cv-01501; 3:24-cv-01507; 3:24-cv-01516; 3:24-cv-01517; 3:24-cv-01589; 3:24-cv-01592; 3:24-cv-01671; and 3:24-cv-01788.<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND**
**SERVICE AWARDS, WITH INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY................................................2

III.  SUMMARY OF THE SETTLEMENT ..................................................................3

    A.  Settlement Class.........................................................................................4

    B.  Settlement Consideration ...........................................................................4

        1.  Cash Payments.................................................................................4

        2.  Credit Monitoring ............................................................................5

        3.  *Pro Rata* Adjustments on Cash Payments .......................................5

        4.  Attorneys' Fees, Costs, and Service Awards ....................................6

        5.  Funds Remaining After Distribution ................................................6

        6.  Releases...........................................................................................6

IV.   NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS ..............................7

    A.  The Notice Program Satisfied Rule 23 and Due Process................................7

    B.  Claims, Opt-Outs, and Objections .............................................................8

V.    SETTLEMENT CLASS CERTIFICATION ........................................................9

VI.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..........................10

    A.  Legal Standard for Final Approval ...........................................................10

    B.  Plaintiffs and Class Counsel Adequately Represented the Settlement Class .............12

    C.  The Settlement Resulted from Arm's-Length Negotiations Without Fraud or Collusion..............................................................................................12

    D.  The Settlement Provides Substantial Relief to the Settlement Class Considering Rule 23(e)(2)(C)(i)–(iv) and the Second, Fourth, and Fifth *Reed* Factors..................13

i

E.  The Settlement Treats Settlement Class Members Equitably, Satisfying Rule 23(e)(2)(D)) ...........................................................................................15

F.  The Remaining Reed Factors Further Support Final Approval ..................................16

VII.  APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS .......17

A.  The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts .............................................................................................................17

B.  The *Johnson* Factors Support the Requested Attorneys' Fee ....................................18

1.  The Claims Against Defendant Required Substantial Time and Labor ................19

2.  The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel ............................................................................................20

3.  Class Counsel Achieved a Successful Result in the Face of Significant Risk .......20

4.  Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Lost Opportunity for Other Employment .......................21

5.  The Requested Fee Comports with the Market for Fee Awards in Contingent Fee Cases and Fee Awards in Similar Class Actions ............................................22

C.  The Requested Fee Comports with the Market for Fee Awards in Contingent Fee Cases and Fee Awards in Similar Class Actions ...................................................23

D.  The Service Awards Requested Are Reasonable ........................................................24

VIII.  CONCLUSION...................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                            **Page(s)**

*Alliance Ophthalmology, PLLC v. ECL Group, LLC,*
 No. 1:22-CV-296:22-CV-468, 2024 WL 3203226 (M.D.N.C. June 27, 2024) ........................23

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,*
 No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .............................................11

*Armstrong v. Kimberly-Clark Corp.,*
 No. 3:20-CV-3150-M, 2024 WL 1123034 (N.D. Tex. Mar. 14, 2024) ......................8, 9, 23, 24

*Ayers v. Thompson,*
 358 F.3d 356 (5th Cir. 2004) .........................................................................................16

*Boeing Co. v. Van Gemert,*
 444 U.S. 472 (1980) ....................................................................................................17

*Brantley v. Surles,*
 804 F.2d 321 (5th Cir. 1986) ....................................................................................18, 19

*Buetten v. Harless,*
 No. 3:2009-cv-00791, 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ..................................22

*Burnett v. CallCore Media, Inc.,*
 No. 4:21-CV-03176, 2024 WL 3166453 (S.D. Tex. June 25, 2024) ..................................19, 21

*Cotton v. Hinton,*
 559 F.2d 1326 (5th Cir. 1977) .................................................................................11, 16

*DeHoyos v. Allstate Corp.,*
 240 F.R.D. 269 (W.D. Tex. 2007) ..............................................................................16, 24

*Diaz v. World Acceptance Corp.,*
 No. 1:19-CV-957-RP, 2021 WL 2709677 (W.D. Tex. Jan. 7, 2021) .......................................24

*Erica P. John Fund, Inc. v. Halliburton Co.,*
 No. 3:02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................15, 22

*Feder v. Elec. Data. Sys. Corp.,*
 429 F.3d 125 (5th Cir. 2005) .........................................................................................12

*Fox v. Iowa Health Sys.,*
 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .........................................................................20

*Frost v. Oil States Energy Servs., LLC,*
 No. 4:15–cv– 1100, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015) ..................................15, 22

*Fulton-Green v. Accolade,*
 No.18-27, 42019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .......................................................21

*Hashemi v. Bosley, Inc.*,
   No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) .........................21

*Hays v. Eaton Grp. Attorneys, LLC*,
   No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) .....................................11, 13

*Hill v. Hill Bros. Constr. Co., Inc.*,
   No. 3:14-CV-213-SA-RP, 2018 WL 280537 (N.D. Miss. Jan. 3, 2018) ..................................22

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ........................14, 20, 21

*In re CorrectCare Data Breach Litig.*,
   No. 5:22-319-DCR, 2024 WL 4211480 (E.D. Ky. Sept. 14, 2024) ........................................23

*In re: Forefront Data Breach Litig.*,
   No. 1:21-cv-000887-LA, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ................................23

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
   No. 24-MD-03090, 2025 WL 2675178 (S.D. Fla. Sept. 17, 2025) .........................................23

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
   No. 24-MD-03090, 2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ............................................23

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ..................................................................................................21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................12, 23

*In re High Sulfur Content Gasoline Prod. Liab. Litig.*,
   517 F.3d 220 (5th Cir. 2008) ..................................................................................................17

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......................................20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) .......................14

*Johnson v. Ga. Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..................................................................................................18

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 ...................................................................................................11, 13, 16

*Logan v. Marker Group, Inc.*,
   No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) .................................14, 20

*Louisiana Power & Light Co. v. Kellstrom*,
   50 F.3d 319 (5th Cir. 1995) ....................................................................................................18

iv

*Maldini v. Marriott Int'l, Inc.*,
  140 F.4th 123 (4th Cir. 2025) ...................................................................14

*Marriott Int'l, Inc. v. Accenture LLP*,
  78 F.4th 677 (4th Cir. 2023) ........................................................14, 20, 21

*Miller v. Global Geophysical Servs., Inc.*,
  No. 14-cv-0708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) .........................15, 22

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ...................................................................17

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................8

*O'Donnell v. Harris Cnty.*,
  No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ......................8, 11

*Parmelee v. Santander Consumer USA Holdings Inc.*,
  No. CV H-16-1414, 2019 WL 2352837 (N.D. Tex. June 3, 2019) .........................22

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) ...........................................................11

*Purdie v. Ace Cash Express, Inc.*,
  No. 3:01-CV-1754-L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) .........11, 24, 25

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ...........................................................10

*Rodriguez v. Stage 3 Separation, LLC*,
  No. 5:14–CV–00603–RP, 2015 WL 12866212 (W.D. Tex. Dec. 23, 2015) ............24

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................19, 20

*Slipchenko v. Brunel Energy, Inc.*,
  No. CIV.A. H-11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ..................24

*Spegele v. USAA Life Ins. Co.*,
  No. 5:17-cv-967-OLG , 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ................11

*Theus v. Brinker Int'l, Inc.*,
  No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) ......14, 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ........................................................10, 18

*Vaughn v. Am., Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007) ...............................................13

*Welsh v. Navy Fed. Credit Union*,
　No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .............................22

## **Rules**

Federal Rule of Civil Procedure 5  ............................................................................................26

Federal Rule of Civil Procedure 23  ....................................................................................*Passim*

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1] respectfully submit this Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit C***. The Court should enter the Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(2)–(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A., Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Tyler J. Bean of Siri & Glimstad LLP, and Joe Kendall of Kendall Law Group, PLLC as Class Counsel pursuant to Rule 23(g)(1); (5) confirming the appointment of Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; (6) awarding Class Counsel $1,880,000.00 for attorneys' fees and $28,939.37 for reimbursement of costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) approving payment of the Settlement Administration Costs; (9) overruling timely objections, if any; and (10) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## I.    INTRODUCTION

On August 20, 2025, this Court preliminarily approved the Settlement, adopting the Findings, Conclusions, and Recommendations of the United States Magistrate Judge to do so. Dkt. Nos. 61, 63, 64. The Settlement provides substantial Settlement Class Member Benefits for 739,276 individuals via a non-reversionary, all-cash Settlement Fund of $5,640,000.00, from which Settlement Class Members may elect to receive Cash Payments and/or Credit Monitoring.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A*** ("SA").

SA ¶ 56. The Settlement Fund will also be used to pay Settlement Administration Costs, Court-awarded Service Awards, and Court-awarded attorneys' fees and costs. *Id.* ¶ 60. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class.

Plaintiffs now move the Court for Final Approval, and apply for an award of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, there are no objections to the Settlement or opt-outs from the Settlement Class. Admin. Decl. ¶ 31. This overwhelmingly positive response affirms the Court's initial conclusion, outlined in the Preliminary Approval Order, that the Settlement is fair, reasonable, and adequate. Class Counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. The Court should grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On or about April 14, 2024, Defendant detected that an unauthorized party had gained access to parts of its internal computer systems, and after further analysis, determined the Private Information of consumers who applied to Defendant for residential services may have been affected. SA ¶ 3. In or around June 2024, Defendant began sending notice letters to individuals advising that their Private Information was potentially affected in the Data Incident. *Id.* ¶ 4.

Commencing in June 2024, Defendant was named in the 18 Related Actions seeking recompense for the Data Incident. *Id.* ¶ 5. Of those Related Actions, 15 were consolidated into this Action by order of the Court on July 25, 2024; two were consolidated into this Action by order of the Court on August 6, 2024; and the last was consolidated into this Action by order of the Court on September 6, 2024. In addition to consolidating the actions, the Court appointed Class Counsel

as Interim Co-Lead Counsel. Dkt. Nos. 8, 9. On September 9, 2024, Plaintiffs filed their Consolidated Class Action Complaint, alleging the following causes of action: (1) negligence/negligence *per se*; (2) breach of express contract; (3) breach of implied contract; (4) invasion of privacy/intrusion upon seclusion; (5) violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*; (6) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*; (7) violation of the Florida Unfair And Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (8) violation of the Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*; (9) violation of the New York General Business Law, N.Y. Gen. Bus. L. § 349, *et seq.*; (10) violation of the United States Cable Act, 47 U.S.C. § 521, *et seq.*; (11) unjust enrichment; and (12) declaratory judgment. Dkt. No. 32 at ¶¶ 303-489.

Thereafter, in an effort to conserve resources of all concerned, the Parties decided to explore early resolution. Plaintiffs requested, and Defendant provided, informal discovery pertaining to the class size, types of Private Information impacted, and damages suffered by the Settlement Class. SA ¶ 10. Class Counsel consulted with liability and damage experts. *Id.* The Parties' negotiations were ultimately successful and resulted in an agreement in principle on February 12, 2025, at which time the Parties began drafting, negotiating, and finalizing the Agreement, Notices, and Claim Form accompanying the Motion for Preliminary Approval. *Id.* ¶¶ 11-12. On April 11, 2025, the Parties signed the Agreement and Plaintiffs filed the Motion for Preliminary Approval. *Id.* ¶ 13; Dkt. No. 60.

The Court entered its Preliminary Approval Order on August 20, 2025, preliminarily certifying the Action as a class action for Settlement purposes pursuant to Rule 23(a) and (b)(2)-(3). Dkt. No. 64 at 3–5. The Court did so after considering the detailed analysis of those factors in

3

the Findings, Conclusions, and Recommendations of the United States Magistrate Judge. Dkt. No. 61 at 6-11. The Notice Program and Claim Process are ongoing in accordance with the Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 22–33.

## III.    SUMMARY OF THE SETTLEMENT

Plaintiffs seek Final Approval for the Settlement Class comprising of "all living individuals residing in the United States who received notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident." SA ¶ 52. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id.*

### A. Settlement Consideration

The non-reversionary all-cash $5,640,000.00 Settlement Fund will be used to pay (1) Cash Payments and Credit Monitoring; (2) all Settlement Administration Costs; (3) any Court-approved Service Awards to Class Representatives; and (4) any Court-awarded attorneys' fees and costs to Class Counsel. *Id.* ¶ 60.***Cash***

#### 1.    ***Payments***

All Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Flat Cash. *Id.* ¶ 63. All Cash Payments will be subject to a *pro rata* increase or decrease from the Net Settlement Fund depending on the value of all Valid Claims. *Id.*

***Cash Payment A – Documented Losses.*** Settlement Class Members may submit Claims for up to $5,000.00 per Settlement Class Member upon presentation of reasonable documented losses related to the Data Incident. To do so, Settlement Class Members must elect Cash Payment A on the Claim Form, attesting under penalty of perjury that they incurred documented losses, and

submit reasonable documentation of those losses. *Id.* ¶ 63.a. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason and the Settlement Class Member fails to cure, the Claim for Cash Payment A – Documented Losses will be rejected and treated as if the Settlement Class Member elected Cash Payment B – Flat Cash. *Id*.

***Cash Payment B – Flat Cash Payment.*** As an alternative to Cash Payment A – Documented Losses, Settlement Class Members may elect to receive Cash Payment B – Flat Cash, which is a fixed cash payment in the estimated amount of $100.00. *Id*. ¶ 63.b.***Credit***

### 2.  *Monitoring*

In addition to Cash Payments, all Settlement Class Members may also make a Claim for two years of Credit Monitoring that includes (i) real-time credit file monitoring at all three bureaus; (ii) dark web scanning with immediate notification of potential misuse; (iii) comprehensive public record monitoring; (iv) identity theft insurance (with no deductible); and (v) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 63.c. The Credit Monitoring has an approximate value of $90.00 per year per Settlement Class Member.

### 3.  ***Pro Rata* Adjustments on Cash Payments**

Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund if the value of all Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id.* ¶ 63. If the amount of Valid Claims exhausts the Net Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. *Id*. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Net Settlement Fund first for the payment of Credit Monitoring and then for Cash Payments. *Id*. Any *pro rata* adjustment will be on an equal percentage basis. *Id.* In the unexpected event the Credit Monitoring value on its own exhausts the

Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id.*

### 4.  ***Attorneys' Fees, Costs, and Service Awards***

The Settlement Fund will also be used to pay Class Counsel's Court-awarded attorneys' fees and costs and reasonable Service Awards for the Class Representatives. *Id.* ¶ 60. As explained in the Agreement and the Notice to the Settlement Class, Class Counsel seek an attorneys' fees award not to exceed one-third of the Settlement Fund ($1,880,000.00), plus reimbursement of litigation costs. SA ¶¶ 99; Joint Decl. ¶ 38. Additionally, subject to Court approval, the Agreement provides for $2,500.00 Service Awards for each of the Class Representatives from the Settlement Fund. SA ¶ 98. The Service Awards are meant to compensate Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation and answering questions, maintaining contact with Class Counsel, reviewing case documents, and being prepared to assist with discovery. Joint Decl. ¶¶ 35–36. Class Counsel negotiated attorneys' fees, costs, and Service Awards as part of the total Settlement Class Member Benefits only after agreeing to the Settlement's material terms. *Id.* ¶ 20.***Funds***

### 5.   ***Remaining After Distribution***

The Settlement will exhaust the Settlement Fund. If funds remain in the Settlement Fund 240 days after the Settlement Administrator sends an email to Settlement Class Members asking them to select their form of payment, any residual shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. SA ¶¶ 94, 101.  The Parties propose the Texas Bar Foundation (https://txbf.org/) as the *cy pres* recipient. Joint Decl. ¶ 18.

### 6.  ***Releases***

The Releasing Parties will release the Released Parties for claims relating to the Data

Incident. SA ¶ 102. The Releases are narrowly tailored to the Action's claims. Joint Decl. ¶ 19.

## IV.    NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

### A.  The Notice Program Satisfied Rule 23 and Due Process

The Settlement Administrator implemented the Notice Program in full compliance with the Settlement Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 22–33. Double-sided Postcard Notices with tear-off Claim Forms were sent to all Settlement Class members for whom a physical address was provided by Defendant. *Id*. ¶ 24. Postcard Notices returned as undeliverable are re-mailed to new addresses found using a reasonable address trace service. *Id*. ¶ 26. The Settlement Administrator expects the Notice Program will reach a high percentage of the Settlement Class, well within the Federal Judicial Center's standard of 70–95%, and will provide a supplemental declaration to Court prior to the Final Approval Hearing with additional details regarding the final reach of the Notice Program and individual notice efforts to the identified Settlement Class.  *Id*. ¶ 38.

The Postcard Notice clearly and concisely summarized the Settlement and the Settlement Class's legal rights, and directed members of the Settlement Class to the Settlement Website for additional information, including the Long Form Notice, Settlement Agreement, and Claim Process. SA, Ex. 1. The Long Form Notice, which details the procedures to opt-out or object to the Settlement or to make a Claim, is available on the Settlement Website and by mail upon a Settlement Class member's request. Admin Decl. ¶¶ 27–28. The Settlement Website also allows the Settlement Class to review important documents and relevant dates, and provides contact information for the Settlement Administrator. *Id*. ¶ 28. As of September 18, 2025, there have been 11,148 unique visitor visits to the Settlement Website, and 38,779 web pages have been presented. *Id*. Additionally, the Settlement Administrator established a toll-free telephone line for Settlement

Class members to call with Settlement-related inquiries. *Id*. ¶ 29. As of September 18, 2025, there have been 1,078 calls to the toll-free line, representing 2,634 total minutes of use. *Id.*

The Notice Program was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements." *Armstrong v. Kimberly-Clark Corp*., No. 3:20-CV-3150-M, 2024 WL 1123034, at *3 n.3 (N.D. Tex. Mar. 14, 2024) (quotations omitted); *see also O'Donnell v. Harris Cnty*., No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Rather, settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Armstrong*, 2024 WL 1123034, at *3 n.3.

Here, the Notices adequately informed the Settlement Class of the nature of the Action, the Settlement Class definition, the claims at issue, the binding effect of Final Approval and class judgment, and the Settlement Class members' rights to object, opt-out, and/or enter an appearance through an attorney. Admin Decl. ¶ 34–35. The forms of Notice utilized clear and concise language that is easy to understand. *Id.* ¶ 34. Moreover, the Settlement Administrator—with the Parties' assistance—is taking all necessary measures to ensure Notice reached as many Settlement Class members as possible. Thus, the Notice provided has been consistent with the Notice Program the Court approved in its Preliminary Approval Order, satisfies due process considerations of the United States Constitution, and weighs in favor of Final Approval. *See id*. ¶¶ 37–41.**Claims**

## B.  Claims, Opt-Outs, and Objections

The Claim Process was structured to give all members of the Settlement Class adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to

the Settlement. Joint Decl. ¶ 30. The opt-out and objection deadline is October 14, 2025, and the Claim Form Deadline is October 27, 2025. Admin Decl. ¶¶ 31, 33. As of September 18, 2025, the Settlement Administrator has received 5,527 Claim Forms, no opt-out requests, and no objections. *Id.* With a month left before the Claim Form Deadline, Class Counsel anticipate the number of Claims will continue to increase. Joint Decl. ¶ 31. Claim Forms are still subject to final audits, including a full assessment of each Claim's validity and a review for duplicate submissions. Admin Decl. ¶ 33. Class Counsel will update the Court with the final Notice Program and Claim Process results at the Final Approval Hearing, including responding to any objections, if filed.

## V.    SETTLEMENT CLASS CERTIFICATION

In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding the prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(2)–(3), and that the Settlement Class should be certified. Dkt. No. 64 at 3–5. The Court did so after considering the detailed analysis of those factors in the Findings, Conclusions, and Recommendations of the United States Magistrate Judge. Dkt. No. 61 at 6-11. The Court appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and Jeff Ostrow, Gary M. Klinger, Tyler J. Bean, and Joe Kendall as Class Counsel pursuant to Rule 23(g)(1). The Court also appointed Epiq as the Settlement Administrator and approved the Notice Program and Claim Process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. Dkt. No. 60 at 9–12.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  Legal Standard for Final Approval

To warrant approval under Rule 23(e) a proposed class action settlement must be "fair, reasonable and adequate," based on the following factors:

(A)    the class representative and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23(e)(2) factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six fairness, reasonableness, and adequacy factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery and (6) the opinions of the class counsel, class representatives and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (citing *Reed*, 703 F.2d at 172).

As Magistrate Judge McKay explained in his detailed analysis of the relevant factors at the Preliminary Approval stage, the Rule 23(e)(2) requirements "do not 'displace any factor' sanctioned by the Fifth Circuit," and indeed, "overlap significantly with the *Reed* factors." Dkt.

No. 61 at 13 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amend.). *See also O'Donnell*, 2019 WL 4224040, at \*8 ("Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements."); *Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at \*9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at \*3 (S.D. Tex. Jan. 30, 2019); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amend. ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Accordingly, Fifth Circuit courts consider Rule 23(e)(2) as informed by the *Reed* factors.

In considering the relevant factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc*., 2003 WL 22976611, at \*4 (N.D. Tex. Dec. 11, 2003). Because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Klein*, 705 F. Supp. 2d at 649 ("[A] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances."). Thus, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Id*.

This Court granted Preliminary Approval, and "[n]othing has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co*., 2021 WL 4935978, at \*3 (W.D. Tex. Aug. 26, 2021). The positive response to the Settlement—no opt-outs or objections—confirms the Court's preliminary determination and underscores that the Settlement represents an excellent result for the Settlement Class. Thus, Final

11

Approval should be granted.

**B. Plaintiffs and Class Counsel Adequately Represented the Settlement Class.**

As with Rule 23(a) adequacy of representation requirement, to satisfy Rule 23(e)(2)(A) Plaintiffs must establish (1) there is no antagonism or conflict of interest between Class Representatives and other members of the Settlement Class; and (2) Class Counsel and Class Representatives are competent, willing, and able to protect the interests of absent Settlement Class members. *Feder v. Elec. Data. Sys. Corp*., 429 F.3d 125, 130 (5th Cir. 2005). Here, all Settlement Class members and the Class Representatives are potentially affected by the same Data Incident, and thus have common interests. Joint Decl. ¶ 37. Moreover, Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. *Id*. ¶ 36.

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. *Id*. ¶ 41. To do so, they relied on their extensive experience in data breach litigation, their detailed investigation of this Action, and informal discovery exchanged in connection with settlement negotiations. *Id*. This weighs in favor of Final Approval. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). As such, Rule 23(e)(2)(A) supports Final Approval.

**C. The Settlement Resulted From Arm's-Length Negotiations Without Fraud or Collusion.**

In considering Rule 23(e)(2)(B) and the related first *Reed* factor, "[t]he Court may . . .

presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *O'Donnell*, 2019 WL 427331, at *10 (quoting *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)); *see also Klein*, 705 F. Supp. 2d at 651. Upon a detailed analysis of the foregoing authorities, Magistrate Judge McKay correctly applied the presumption to find no evidence of fraud or collusion in connection with this Settlement resulting from the Parties' good-faith negotiations. *See* Dkt. No. 61 at 14–15.

Nothing has changed since Preliminary Approval, and there remains no indication of fraud or collusion. After exchanging information related to liability and damages, the Parties participated in good-faith Settlement negotiations and were able to reach an agreement. Joint Decl. ¶ 12. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement, as memorialized in the Agreement. *Id*. ¶ 14. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Rule 23(e)(2)(B) and the first *Reed* factor are satisfied.

**D. The Settlement Provides Substantial Relief to the Settlement Class Considering Rule 23(e)(2)(C)(i)–(iv) and the Second, Fourth, and Fifth *Reed* Factors.**

The third and most important Rule 23(e)(2) factor weighs heavily in favor of granting Final Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for incurred harms via Cash Payments (up to $5,000.00 for Cash Payment A – Documented Losses, or an estimated $100 for Cash Payment B – Flat Cash, subject to *pro rata* adjustment), and protections against potential future fallout from the Data Incident via Credit Monitoring. Joint Decl. ¶¶ 15–17. These Settlement Class Member Benefits are consistent with, and in fact exceed,

those in other approved settlements. *Id.* ¶ 26.

While Plaintiffs are confident in their claims' merits, the litigation risks cannot be disregarded. *Id*. ¶ 24. At least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc*., 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). *See also In re Target Corp. Customer Data Sec. Breach Litig*., 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues."). Plaintiffs also anticipate substantial additional costs should litigation continue, including expert witness fees and discovery. Joint Decl. ¶ 24. Plaintiffs would need to defeat a motion to compel arbitration (and an interlocutory appeal of the denial of any such motion), a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. *Id*.

Class certification is another hurdle. *See, e.g., Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024) (same). To date, to Class Counsel's knowledge, no data breach class action has been tried. Joint Decl. ¶ 24.

Through the Settlement, Plaintiffs and Settlement Class Members avoid these and other risks, including potentially losing at trial, and gain significant Settlement Class Member Benefits avoiding the risk of receiving nothing, if the case continued. The Settlement provides immediate

and substantial value, $5,640,000.00 non-reversionary Settlement Fund to 739,276 Settlement Class Members—similar to or exceeding the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. Reduced to a per-person amount, this Settlement provides $7.50 per Settlement Class Member. A few recent examples of finally approved data breach settlements demonstrate how this Settlement compares very favorably, and in fact exceeds, many similar common fund data breach settlements. *See, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc*., No. 3:20-cv-3424 (N.D. Tex.) ($2,350,000 common fund for 725,000 class members); *Brink et al. v. SysInformation Healthcare Services, LLC, et al.*, No. 1:24-cv-00501-ADA (W.D. Tex.) ($2,800,000 common fund for 514,324 class members); *In re: Berry, Dunn, McNeil & Parker Data Security Incident Litig*., No. 2:24-cv-00146-JAW (D. Me. June 6, 2025) ($7.25 million settlement fund for 2,204,639 class members); *In re: CentraState Healthcare Data Security Incident Litig.*, No. OCN-L-2002-24 (Superior Court of New Jersey, Civil Division, Ocean County) ($2,100,000 common fund for 569,984 class members).

As detailed below, the requested attorney's fee of one-third of the common Settlement Fund ($1,880,000.00) is regularly granted in the Fifth Circuit as well. *See, e.g., Seidner v. Kimberly Clark Corp., et al*., No. 3:21-cv-00867-L (N.D. Tex. July 22, 2025), Dkt. No. 128 at 1 (Lindsay, J.) (awarding one-third settlement fund); *Erica P. John Fund, Inc. v. Halliburton Co*., No. 3:02-CV-1152-M, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (same); *Miller v. Global Geophysical Servs., Inc*., No. 14-cv-0708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (same); *Frost v. Oil States Energy Servs., LLC*, No. 4:15–cv– 1100, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015) (same).

**E. The Settlement Treats Settlement Class Members Equitably, Satisfying Rule 23(e)(2)(D)).**

Here, the Settlement does not improperly discriminate between any segments of the

Settlement Class. Joint Decl. ¶ 27. All Settlement Class members are eligible to submit Claims for the same relief, *i.e.*, Cash Payments and Credit Monitoring. Accordingly, this Rule 23(e)(2)(D) factor weighs in favor of Final Approval.

### F. The Remaining *Reed* Factors Further Support Final Approval.

Beginning with the third *Reed* factor (the stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties, months of litigation, and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Joint Decl. ¶¶ 33, 41. Importantly, where the Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent settlement approval. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton*, 559 F.2d at 1331.

As to the sixth *Reed* factor (opinions of class counsel, class representatives, and absent class members), there is no antagonism to the Settlement. *See* Admin. Decl. ¶ 31. Plaintiffs approve of the Settlement's terms, as do Class Counsel, based on their deep experience litigating data privacy class actions and other complex litigation. Joint Decl. ¶ 23. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference").

As of September 18, 2025, there have been no objections to the Settlement, nor any opt-outs, evidencing the Settlement Class's positive reaction. Admin. Decl. ¶ 31. If any objections are filed, Class Counsel will respond to them at the Final Approval Hearing.

Accordingly, with all Rule 23(e)(2) and *Reed* factors demonstrating the Settlement is fair,

reasonable, and adequate, the Court should grant Final Approval.

## VII.    APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to the Settlement and Notice, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of $1,880,000.00 (one-third of the Settlement Fund), for attorneys' fees, and $28,939.37 for reasonable litigation costs. Joint Decl. ¶ 38. Plaintiffs also seek Service Awards of $2,500.00 each for the Class Representatives. *Id.* ¶ 35.

Fifth Circuit precedent governing common fund settlements confirms this Court has discretion to use either the percentage of the fund or lodestar method to determine whether the requested fee award is appropriate. Class Counsel seek an attorneys' fee award under the percentage method, which is the favored method in the Fifth Circuit. The award requested is reasonable and well within the range of attorneys' fee awards in this Circuit. The requested litigation costs and Service Awards for Class Representatives are also reasonable.

### A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

Rule 23 authorizes awards in class action settlements for "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under the well-settled "common fund" doctrine, attorneys who achieve recovery for a class via a common fund are entitled to an award of attorneys' fees and costs from that fund as compensation for their work. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). In class action settlements, courts retain an "independent duty" to "ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008).

Courts in the Fifth Circuit typically employ one of two methods for calculating attorney's fees in a common fund case:

> (1) the percentage of the fund method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.

*Union Asset*, 669 F.3d at 643–44. The percentage of fund method, blended with the Fifth Circuit's "*Johnson* factors" (defined *infra*), is the preferred method to assess the reasonableness of the attorneys' fees sought in a common fund settlement and should be applied in this Action. *Id.*

**B. The *Johnson* Factors Support the Requested Attorneys' Fee.**

To determine whether the requested fee is reasonable under the percentage method, courts apply the factors from *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("*Johnson* factors"): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[2] *Johnson*, 488 F.2d at 717–19. The Court need not consider each factor in making its determination. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995). Each of the *Johnson* factors will vary, depending on the case, and rather than imposing a rigid application, the Fifth Circuit entrusts lower courts to apply those factors in view of the case's particular circumstances. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

---

[2] *Johnson* factors 7 and 11 are inapplicable in this Action.

### 1. ***The Claims Against Defendant Required Substantial Time and Labor.***

Class Counsel's coordinated work paid dividends for the Settlement Class. Joint Decl. ¶ 46. Class Counsel's time and resources devoted to prosecuting and settling the Action justify the requested fee. *Id*. Prosecuting and settling the Action's claims demanded considerable time and labor, making this fee request reasonable. *Id*. ¶ 47. Class Counsel's organization ensured work was coordinated to maximize efficiency and minimize duplicative work. *Id*. Indeed, this time and labor factor turns on more than the number of hours worked because an early settlement signals counsel's efficiency and effectiveness in avoiding lengthy litigation. *See Burnett v. CallCore Media, Inc*., No. 4:21-CV-03176, 2024 WL 3166453, at *6 (S.D. Tex. June 25, 2024) ("Overemphasizing the hours worked on a case, rather than emphasizing the value of those hours in moving the case toward a successful resolution, . . . can encourage delay, inefficiency, and recalcitrance towards early settlement."). It is more important to emphasize the value of the hours worked. *Id.*; *see also Schwartz v. TXU Corp*., No. 3:02-CV-2243-K, 2005 WL 3148350, at *28 (N.D. Tex. Nov. 8, 2005) (class counsel's securing recovery for settlement class "without the substantial expense, risk and delay of continued litigation . . . supports the reasonableness of the percentage fee requested").

Class Counsel devoted substantial time investigating the facts and interviewing potential plaintiffs, researching and developing the legal claims at issue, exchanging informal discovery, consolidating and organizing the Related Actions, consulting with liability and damage experts, negotiating and drafting the Agreement, interviewing proposed settlement administrators, seeking Preliminary Approval, complying with the Preliminary Approval Order to ensure the Notice Program and Claim Process were implemented, and preparing this Motion. *Id*. ¶ 47. Substantial time will also be spent preparing for and attending the Final Approval Hearing and then, should

Final Approval be granted, working with the Settlement Administrator to ensure Valid Claims are paid and the Settlement is implemented in accordance with the Court's order and the Agreement. *Id*. Each of those efforts is and was essential to achieving the Settlement. *Id*.

### 2. *The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.*

Class Counsel's legal work has conferred a substantial benefit on the Settlement Class in the face of significant obstacles. This factor weighs heavily in support of the requested attorneys' fee award. Courts routinely recognize the novelty and difficulty of the questions present in a case as a significant factor to consider in determining a reasonable fee award. *See, e.g. Schwartz*, 2005 WL 3148350, at *29. Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact, as data security litigation continues to develop and evolve. *See, e.g. Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig*., 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (data breach litigation "is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Logan*, 2024 WL 3489208, at *13 (dismissing all but one claim). *See also In re Blackbaud*, 2024 WL 2155221, at *28 (denying class certification); *Marriott Int'l*, 78 F.4th at 688 (vacating class certification on appeal). In evaluating the quality of Class Counsel's representation, the Court should also consider opposing counsel's skill. *See Schwartz*, 2005 WL 3148350, at *30. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 40.

### 3. *Class Counsel Achieved a Successful Result in the Face of Significant Risk.*

Given the significant litigation risks Class Counsel faced, the Settlement represents a

successful result, with a $5,640,000.00 Settlement Fund recovered for the Settlement Class, affording them meaningful Settlement Class Member Benefits designed to address the typical repercussions consumers face following a data breach. Further underscoring the risks involved, data breach class actions have historically faced substantial hurdles related to class certification. *See, e.g.*, *Marriott Int'l*, 78 F.4th at 688 (vacating class certification on appeal); *Brinker Int'l, Inc.*, 2025 WL 1786346, at *4 (denying class certification); *In re Blackbaud*, 2024 WL 2155221, at *1 (same); *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) (observing "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Fulton-Green v. Accolade*, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 24. Considering Defendant has compelling defenses, continuing to pursue the Action posed significant risks for Plaintiffs and the Settlement Class. *Id*. Thus, the successful result achieved in the face of these significant risks supports Class Counsel's requested attorneys' fee.

### 4. *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Lost Opportunity for Other Employment.*

In undertaking to prosecute the Action entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other fee-generating matters. *Id*. ¶ 43. That risk warrants an appropriate fee. *Burnett*, 2024 WL 3166453, at *7 (citation and quotations omitted) ("The risk of receiving little to no recovery is a major factor in considering an award of attorneys' fees."). Class Counsel remain uncompensated for the substantial time invested Action and costs advanced. Joint Decl. ¶¶ 42, 44.

21

Policy concerns like "ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims" also support the requested fee. *Hill v. Hill Bros. Constr. Co., Inc*., No. 3:14-CV-213-SA-RP, 2018 WL 280537, at *3 (N.D. Miss. Jan. 3, 2018).

### 5. *The Requested Fee Comports with the Market for Fee Awards in Contingent Fee Cases and Fee Awards in Similar Class Actions.*

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Fifth Circuit and in this District. Fifth Circuit courts generally award fees in the 30% to 36% range. *Erica P. John Fund, Inc. v. Halliburton Co*., 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018). *See also, e.g., Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end."); *Seidner*, No. 3:21-cv-00867-L (N.D. Tex. July 22, 2025), Dkt. No. 128 at 1 (Lindsay, J.) (awarding one-third of settlement fund); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 3:16-CV-00783-K, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (same); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *12 (same); *Miller*, 2016 WL 11645372 at *1 (same); *Frost*, 2015 WL 12780763, at *2 (same). Class Counsel's fee request is also reasonable considering the market rate in the private marketplace, where a typical contingent fee for a non-class case is one-third. *See, e.g., Buetten v. Harless*, 2013 WL 12303143, at *11 (N.D. Tex. Nov. 13, 2013) ("The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.").

Examples of attorneys' fee awards of one-third or higher in data breach cases include the following: *Phillips et al. v. Bay Bridge Associates*, Case 1:23-cv-00022-DAE (W.D. Tex. July 30, 2024), Dkt. No. 53 (awarding one-third of qualified settlement fund); *In re Tenet Healthcare*, Cause No. DC-22-07513 (Dist. Ct. Dallas County, Tex. May 22, 2024) (awarding 35% of

$10,000,000 common fund); *Garza v. HealthAlliance, Inc*., No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (awarding 35% of settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 2675178, at *13-14 (S.D. Fla. Sept. 17, 2025) (one-third of settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (same); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig*., No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Kondo, et al. v. Creative Services, Inc*., No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), ECF No. 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024) (same); *Abrams, et al. v. The Savannah College of Art and Design Inc*., No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litig.*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); *Davidson v. Healthgrades Operating Company, Inc*., No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022) (same). Thus, this factor supports Class Counsel's fee request.

**C.  Class Counsel's Cost Reimbursement Request Is Reasonable.**

District courts allow reasonable litigation costs to be paid from the common fund. *See Armstrong*, 2024 WL 1123034, at *6 (awarding class counsel reimbursement of costs from common fund where "expenses incurred were reasonably expended in furtherance of the litigation"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 334 (W.D. Tex.

2007); Fed. R. Civ. P. 23(h) (authorizing recovery of "nontaxable costs"). All costs for which reimbursement is sought here were advanced by Class Counsel and necessarily and reasonably incurred in the prosecution of this Action, including filing and other court fees, service fees, non-refundable mediation fees, expert fees, and travel expenses. Joint Decl. ¶ 48. Therefore, Class Counsel's request for $28,939.37 in costs is reasonable and should be awarded.

### D. The Service Awards Requested Are Reasonable.

Plaintiffs and Class Counsel also move for a $2,500.00 Service Award to each Class Representative for their efforts in this Action on behalf of the Settlement Class. Courts approve reasonable service awards to compensate class representatives for their services provided and risks taken. *See, e.g., Seidner*, No. 3:21-cv-00867-L (N.D. Tex. July 22, 2025), Dkt. No. 128 at 1 ($10,000 service awards to each class representative); *Armstrong*, 2024 WL 1123034, at *7 ($2,500 service awards where "Class Representatives performed important work on the case that . . . ultimately made this Settlement possible."); *Diaz v. World Acceptance Corp.*, No. 1:19-CV-957-RP, 2021 WL 2709677, at *2 (W.D. Tex. Jan. 7, 2021) (same); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) ($6,000, $4,000, and $2,000 service awards); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14–CV–00603–RP, 2015 WL 12866212, at *6 (W.D. Tex. Dec. 23, 2015) ($7,500 service award); *Purdie v. Ace Cash Express, Inc*., No. CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) ($16,665 for combined incentive awards to three class representatives).

Likewise, Plaintiffs here have been instrumental in assisting Class Counsel throughout this proceeding as Class Representatives. Joint Decl. ¶ 36. They initiated and remained in contact with Class Counsel, considered and reviewed the pleadings in this case and the Agreement, supervised and monitored Class Counsel's work, provided background documents, and followed the

litigation's progress to ensure the Settlement Class received the best recovery possible, given the particular circumstances and risks of the Action. *Id*. Balancing the services Class Representatives rendered against the modest $2,500.00 requested for each (for a total of $32,500.00), the Court should find the requested Service Awards are reasonable.

## VIII.  CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter a Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(2)-(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A., Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Tyler J. Bean of Siri & Glimstad LLP, and Joe Kendall of Kendall Law Group, PLLC as Class Counsel pursuant to Rule 23(g)(1); (5) confirming the appointment of Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; (6) awarding Class Counsel $1,880,000.00 for attorneys' fees and $28,939.37 for reimbursement of costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) approving payment of the Settlement Administration Costs; (9) overruling timely objections, if any; and (10) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***, updating the form that is an exhibit to the Agreement.

Dated: September 26, 2025                    Respectfully Submitted,

/s/ *Jeff Ostrow*
Jeff Ostrow (admitted *pro hac vice*)                    Joe Kendall
**KOPELOWITZ OSTROW P.A.**                    Texas Bar No. 11260700
One West Las Olas Blvd, Suite 500                    **KENDALL LAW GROUP, PLLC**
Fort Lauderdale, FL 33301                    3811 Turtle Creek Blvd., Suite 825
Tel: 954-332-4200                    Dallas, Texas 75219
ostrow@kolawyers.com                    Tel: 214-744-3000
                    jkendall@kendalllawgroup.com

Gary Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
gklinger@milberg.com

Tyler Bean (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
Tel: 212-532-1091
tbean@sirillp.com

*Class Counsel*

## CERTIFICATE OF CONFERRAL

I hereby certify Plaintiffs and Defendant conferred regarding the relief requested, and this motion is unopposed.

/s/ *Jeff Ostrow*
Jeff Ostrow

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on September 26, 2025, via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

/s/ *Jeff Ostrow*
Jeff Ostrow